CHARLES L. SPIER, Respondent, *v.* CHARLES L. HYDE and WILLIAM R. GARRISON, Appellants.

*Contract — when made by letter, the sum due thereunder being unascertained, a subsequent letter fixing the amount, held to be a binding contract supported by an adequate consideration, and not a mere admission as to the amount due — what is not a finding that the admission was obtained through false representations — what facts do not establish fraud.*

The complaint in an action alleged that the plaintiff, pursuant to a contract with the defendants, procured options on 10,100 shares of the stock of the Goodson Type Casting and Setting Maching Company; that after the options had been procured and the stock purchased, it was agreed between the parties that a new corporation should be formed to be known as the Goodson Graphotype Company; that an agreement was finally entered into between the parties in the form of a letter written by one of the defendants to the plaintiff under date of March 27, 1899, stating that it was the defendants' intention to exchange the 10,100 shares of the Goodson Type Casting and Setting Machine Company for an equal number of the shares of the new company and to place such 10,100 shares of the new company in a pool, and that "we would be willing to set aside for your benefit as full compensation for your services 15 per cent of whatever net profits estimated on the above basis may be found to have been realized from the sale of the pooled stock after the entire 10,100 shares have been pooled and sold. It is understood, however, that this 15 per cent interest relates only and applies solely to the 10,100 shares of stock of the new company and to the net profits, if any, to be derived from the sale thereof on the basis as above stated."

The Goodson Graphotype Company was subsequently incorporated. In an action brought to enforce the agreement as embodied in this letter the defendants interposed an answer alleging that the agreement as set forth in the letter of March 27, 1899, was superseded by an agreement contained in a letter written by one of the defendants to the plaintiff under date of May 8, 1899, providing, "In connection with my letter to you of March 27th, in relation to the formation of the Goodson Graphotype Company, I beg to say that as agreed between us to-day you will be entitled to receive 375 shares of preferred and 375 shares of common stock of the Goodson Graphotype Com-

pany in the event of the formation of that company, which stock shall be in full for your services and all demands under my letter to you of March 27th, 1899. This of course depends upon the formation of the Goodson Graphotype Company and the carrying out of our plans of reorganization as mentioned to you to-day." To this letter was appended a statement signed by the plaintiff in the following form : " The above is perfectly satisfactory to me, and is hereby accepted and confirmed." The plaintiff did not serve a reply to the answer.

The court found that the rights of the parties were governed by the letter of March 27, 1899; that the letter of May 8, 1899, did not constitute a contract, but was a statement merely of the amount due to the plaintiff and an admission by him that such an amount was due; that if the letter of May 8, 1899, should be treated as a contract, it was not binding upon the plaintiff for the reason that the representations which induced the plaintiff to sign the contract were untrue and were relied upon by the plaintiff, who was ignorant of the actual facts, and, further, that the contract of May eighth was ineffectual for want of consideration.

*Held,* that it was not necessary for the plaintiff to traverse the answer, either by a denial of the existence of the alleged agreement of May 8, 1899, or by an averment of affirmative facts by way of avoidance, but that he was entitled to prove any facts showing that the alleged contract had never been made, or, if it was made, to prove facts avoiding the effect thereof;

That the letter of May 8, 1899, was not a mere statement that a certain amount was due to the plaintiff and an admission by him that such amount was due, but that it constituted a binding contract that the sum mentioned therein was the whole amount due to the plaintiff from the defendants;

That, as it appeared that at the time the agreement of May 8, 1899, was entered into, the particular amount of money and stock which the plaintiff was entitled to receive under the agreement of March 27, 1899, was not accurately known, it was competent for the parties to agree upon such amount, and that, in the absence of mistake or fraud, such agreement would be binding upon both plaintiff and defendants;

That the mutual renunciation by the parties of their rights under the contract of March 27, 1899, furnished a sufficient consideration to support the contract of May 8, 1899, and that the fact that the latter agreement was executory did not change its effect;

That a statement in the decision of the trial judge that prior to the acceptance by the plaintiff of the contract of May 8, 1899, one of the defendants made untrue statements to the plaintiff concerning the amount of profits to which he was entitled, and that the plaintiff, who was ignorant of the actual facts, relied upon such statements, did not establish fraud on the part of the defendants;

That, although the evidence might sustain a finding of fraud, the trial court not having made such a finding, the Appellate Division would not resort to such evidence for the purpose of sustaining the judgment;

That the question of the defendants' fraud was dependent, in a measure, upon the construction to be given to the contract of March 27, 1899, and that such construction should be determined upon a new trial.

Appeal by the defendants, Charles L. Hyde and another, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 17th day of July, 1902, upon the decision of the court rendered after a trial at the New York Special Term.

The Goodson Type Casting and Setting Machine Company was a corporation organized under the laws of the State of Minnesota. The complaint in the action avers that the plaintiff entered into a contract with the defendants, whereby the plaintiff was to procure options upon a controlling interest in the shares of said company, and the parties were to form a pool of said stock. The plaintiff procured options on 10,100 shares of the stock, a controlling interest therein. In procuring the stock and attending to the business the plaintiff was to render his services and the defendants were to advance the money. After the options were obtained, the stock was purchased at a given sum per share. It was then agreed by and between the parties that a new corporation should be formed under the laws of the State of New Jersey, to be known as the Goodson Graphotype Company, and subsequently such corporation was formed with a capital stock of $5,000,000, of which $2,500,000 was preferred stock and $2,500,000 common. The parties had several agreements and understandings during the progress of the negotiations, which are set out in detail in the complaint, and finally, under date of March 27, 1899, an agreement was entered into in the form of a letter written by the defendant Hyde to the plaintiff. This letter is as follows:

"New York, *March 27th*, 1899.

"Charles L. Spier, Esq.,

New York City, N. Y.:

"Dear Sir.— Relating to the Goodson Type Casting & Setting Machine Company, on behalf of myself and associates, I beg to say that if the patents are satisfactory and we decide to go on with the business, it is our intention to form a new company under the laws of the State of New Jersey to acquire the control of the present company and we should like to have your assistance. The new company may be called the Goodson Graphotype Company, and it is our intention to exchange 10,100 shares of its stock for an equal

number of shares of the Goodson Type Casting & Setting Machine Company.

"We expect to place this 10,100 shares of stock of the Graphotype Company in portions from time to time in a pool to be charged to the pool at the rate of $22.75 per share. We hope to have this stock underwritten or sold and we shall reserve a part of the money so realized, to be advanced by us, on such terms as we may determine, to the company to be used as working capital, also to defray such expenses as may be incurred from time to time in selling the stock. If you join us the profits to accrue to you in connection with this 10,100 shares of stock, if pooled as above outlined, would, therefore, be estimated as the net sum realized upon the sale of said stock, after deducting and repaying to the persons depositing stock in the pool the above-mentioned $22.75 per share, together with a sum for expenses, and after deducting further whatever sum of money those depositing stock in the pool may desire to reserve to advance for the use of the company as working capital.

"All questions relating to modifications or changes in the plans herein outlined or as to the times and terms of the sale of the pooled stock and as to how much of the proceeds shall be reserved for expenses, etc., are to be determined by Mr. Garrison and myself.

"As consideration for your services in connection with this matter and with the understanding that you are to devote your time exclusively hereafter to the promotion of the new company and its business and welfare until all the stock in the pool is sold, we would be willing to set aside for your benefit as full compensation for your services 15 per cent of whatever net profits estimated on the above basis may be found to have been realized from the sale of the pooled stock after the entire 10,100 shares have been pooled and sold. It is understood, however, that this 15 per cent interest relates only and applies solely to the 10,100 shares of stock of the new company and to the net profits, if any, to be derived from the sale thereof on the basis as above stated.

"Yours truly,

"(Signed)          CHAS. L. HYDE."

This proposition was accepted by the plaintiff. The complaint further avers that by virtue of the terms of this agreement plain-

tiff became entitled to a considerable sum of money and of capital stock by virtue of the formation of the Goodson Graphotype Company and the sale of its stock, and demands judgment that a receiver be appointed of so much of the capital stock of the said company and the net profits of the pool so far as the same remains undisposed of in the hands of the defendants ; that they be enjoined and restrained from selling the same and that an accounting be had between the plaintiff and defendants of the amount of money to which he is entitled to receive and the shares of stock, and that the same may be transferred to him, and for such other and further relief as may be just and equitable.

The defendants answered, denying the making of the agreement mentioned in the complaint. Admit the writing of the letter hereinbefore set forth ; deny that the plaintiff devoted his time to the formation of the company ; deny that he is entitled to receive the stock which he has claimed, and further aver that the agreement of March 27, 1899, as set forth in the said letter, was abrogated and superseded by an agreement embodied in a letter of May eighth which passed between the same parties, of which the following is a copy of the body of the letter, to wit : " In connection with my letter to you of March 27th, in relation to the formation of the Goodson Graphotype Company, I beg to say that as agreed between us to-day you will be entitled to receive 375 shares of preferred and 375 shares of common stock of the Goodson Graphotype Company in the event of the formation of that company, which stock shall be in full for your services and all demands under my letter to you of March 27th, 1899. This of course depends upon the formation of the Goodson Graphotype Company and the carrying out of our plans of reorganization as mentioned to you to-day.

" Yours truly,

" (Signed)                    CHAS. L. HYDE.

" The above is perfectly satisfactory to me, and is hereby accepted and confirmed.

" (Signed)    CHAS. L. SPIER."

For a second and further answer, the defendants further aver that by the acceptance of the terms of said last-mentioned letter, the plaintiff became entitled to receive 375 shares of the preferred and

375 shares of the common stock of the Goodson Graphotype Company in full of all demands under the agreement of March 27, 1899, and that such agreement of May eighth is now in force and has never been abrogated.

After trial was had the court found, among other things, that the contract of March 27, 1899, established the rights and liabilities of the respective parties, and created a partnership in the pool of stock therein referred to ; that such contract was not modified, released or discharged by the transactions of May 8, 1899, and that the latter constituted no defense to the plaintiff's claims ; that such letter and acceptance signed by the parties did not constitute a contract, but was a statement merely of the amount due to the plaintiff, and an admission by him that such an amount is due; that the representations which induced the plaintiff to sign that contract were untrue and were relied upon by the plaintiff, who was ignorant of the actual facts, in consequence of which the letter of May eighth was not binding upon him. The court further held that the last-named contract of May eighth was ineffectual for want of consideration. Interlocutory judgment was directed for an accounting before a referee ; that a receiver be appointed of the stock, etc., and the profits therefrom, and of the moneys which the defendants have received, and that the defendants deliver the stock and pay over the moneys to such receiver, with costs.

From the interlocutory judgment entered upon this decision this appeal is taken.

*Charles B. Alexander,* for the appellants.

*H. Snowden Marshall,* for the respondent.

HATCH, J. :

So far as is material to the disposition of the present appeal, it is only necessary for us to determine the effect of the letter of May eighth, the rights and liabilities of the parties arising therefrom, and the determination of the court based thereon.

The plaintiff in his complaint stands squarely upon the agreement of March twenty-seventh, and from anything which appears in the complaint the later agreement of May eighth has no existence. This did not, however, eliminate it from the case. It being averred

in the answer, as matter of defense, the plaintiff was required to meet it by showing that it was either legally insufficient, or that it had no effect as matter of fact. It was not necessary for the plaintiff to traverse the answer, either by a denial of the existence of the contract, or by an averment of affirmative facts by way of avoidance. The plaintiff is to be deemed to have replied to the answer, so far as to be permitted to interpose any defense which would have the effect of showing that no contract ever was made, or if it existed, of avoiding such contract. (*Kirchner* v. *New Home Sewing Machine Co.*, 135 N. Y. 182.) These being the relative positions of the parties, the plaintiff had the right to prove anything which would defeat the force and effect of the contract of May eighth, and to succeed in such defense, if the facts warranted. This was the course which the trial took, and the court has found that the evidence was sufficient to require the legal conclusion that such contract was not binding. We are, therefore, to examine the testimony in the case, and the decision based thereon, to see if the same may be supported under legal rules. The proposal contained in the contract of May eighth, and the acceptance of the same by plaintiff, are undisputed facts; nevertheless the court held that it did not constitute a contract between the parties, and was in legal effect only a statement that a certain amount was due to the plaintiff from the defendants, and an admission by him that such amount was due; that if it be otherwise treated, it was without binding effect for lack of consideration.

We do not find ourselves in harmony with these views. The contract itself refers in its first sentence to the former contract of March twenty-seventh between the parties. It then refers to a conversation had that day between the defendant Hyde and the plaintiff, and recites that, as agreed upon, the plaintiff will be entitled to receive 375 shares of preferred and 375 shares of the common stock of the Goodson Graphotype Company in the event of its formation, " which stock shall be in full for your services and all demands under my letter to you of March 27th, 1899." This was something more than a statement of an amount due to the plaintiff. It was not only that, but it was a statement that such amount due was in full for all services and demands which the plaintiff had against the defendants by reason of his former contract with them. When the

plaintiff accepted that statement as satisfactory to him, as he did, then it became a binding acknowledgment upon his part that the whole amount he was entitled to receive under and by virtue of his former contract was the stock mentioned therein. Instead, therefore, of this being the statement of a partial account of what was due to the plaintiff, it was a binding contract that it was the whole amount due, and when discharged relieved the defendants from all liability. It is evident, therefore, that the decision cannot be upheld in this respect.

Was it invalid for other reasons? It is not made clear by the proof in the case just what sums of money and shares of stock the plaintiff was entitled to under his former agreement. It was not accurately known at the time when the agreement of May eighth was executed by any of the parties to the action. It is not yet known what the exact amount was to which the plaintiff was entitled, nor can it be established except by an accounting. The parties, therefore, at the time of their negotiations stood in relation to each other of dealing with respect to a matter where the defendants were required to pay and deliver either money or shares of stock, or both, to the plaintiff in compensation for services which he had rendered pursuant to the several contracts which had been made. As the particular amount of money and stock which plaintiff was entitled to receive was not accurately known, it was competent for the parties themselves to agree as to such amount, fix and specify the particular number of shares of stock which were to be delivered in full satisfaction of the whole amount of property and money due. And in the absence of mistake or fraud in making such agreement, it would be binding upon both, and conclusively fix the rights of the respective parties thereto. Such a contract is founded upon a good consideration, for the reason that each party renounces to the other his rights and liabilities under a former contract, and each abandons such rights in consideration that the other will do the like, and the mutual agreements furnish a consideration in law, recognized as binding. (*McIntosh* v. *Miner*, 37 App. Div. 483; *Hartwig* v. *American Malting Co.*, 74 id. 140.)

Nor does the fact that the agreement of May eighth was executory in its character change its effect. It was said by Andrews, J., in *Morehouse* v. *Second Nat. Bank of Oswego* (98 N. Y. 503): "If

the subsequent agreement is accepted in satisfaction, and this appears expressly or by implication, the original cause of action is merged and extinguished. (*Kromer* v. *Heim*, 75 N. Y. 574, and cases cited.) It is plain, also, that if one having a debt or claim against another satisfies or releases it in consideration of an executory promise by the party owing the debt or duty, he cannot afterward enforce his original cause of action upon a mere failure by the other party to perform his promise, ' for he has a remedy to compel performance.' " (*Nassoiy* v. *Tomlinson*, 148 N. Y. 326.) The decision, therefore, cannot be supported upon this ground.

Upon the trial evidence was given which the plaintiff claimed tended to show that the defendant Hyde had been guilty of fraud in making false representations as to the amount and extent of the plaintiff's interest in the pool; that the plaintiff was ignorant in respect of such matters, relied thereon and was misled thereby, in consequence of which the contract of May eighth is void for fraud. There was a sharp conflict in the testimony upon this question. The defendant Hyde denied that he had ever made any misrepresentations, and adduces testimony from other witnesses in support of his contention. The court, however, has not found upon such question. It is stated in the decision that prior to the acceptance by the plaintiff of the contract of May eighth the defendant Hyde made statements to the plaintiff as to the amount of profits coming to the plaintiff, which statements were not true; that they were relied upon by the plaintiff, who was ignorant of the actual facts. This falls far short of a finding that the defendants made the representations, knowing them to be untrue, with the intent that they should be acted upon by the plaintiff, and that in reliance thereon he so acted. This the law requires in the establishment of fraud. (*Oberlander* v. *Spiess*, 45 N. Y. 175; *Kain* v. *Larkin*, 131 id. 300; Cooley Torts [2d ed.], 580 *et seq.*)

It is sufficient to say that even though the proof upon the part of the plaintiff was sufficient from which every element necessary to a finding of fraud could be based, the court has not made such finding, and, consequently, the evidence may not be resorted to for the purpose of sustaining the judgment, although such a finding might have been authorized. It is quite evident that in reaching a conclusion upon this subject the court will be confronted with several

questions which easily suggest themselves. One as to the proper construction of the contract of March twenty-seventh, and the rights of the plaintiff thereunder. If the defendants, acting in good faith, construed such agreement as limiting the plaintiff's rights to a participation in the proportionate amount of the 10,100 shares of stock in the new company and not in all of the profits which should arise from the pooling of the 10,100 shares of stock of the old company, no fraud could be predicated of representations to the plaintiff that his interests and shares of stock amounted to only 361 shares each of preferred and common stock. If such be the construction of the contract, the representations might be true. If the defendants made the representation merely as the expression of an opinion as to the amount which plaintiff's interest would realize or ought to realize, and the extent of the plaintiff's interest was not accurately determined, no fraud could be predicated of such fact, even though the statement of amount was less than the plaintiff was entitled to receive. It is evident that the court has not considered these questions, or at least has not expressed any views thereon in the finding which it made. The defendants are entitled, before they can be charged with fraud, to have these elements considered and a finding made thereon. This has not been done, in consequence of which the judgment may not be sustained upon this ground. It is not essential in the consideration of the present case that we express any opinion respecting the proper construction of the contract of March twenty-seventh and the rights of the plaintiff thereunder. If he be correct in his construction of such contract, then a clear basis exists entitling him to recover the profits of the pool stock of the old company, but even though this be the fact, it was still competent for him to make the agreement of May eighth, and he cannot avoid it if it was not the product of fraud or mistake, or if he had full knowledge upon the subject.

If the defendants' construction of the contract of March twenty-seventh is to obtain, then, under the agreement of May eighth, the plaintiff may have received more than the exact amount to which he is entitled. These questions will all arise upon a new trial, and until all of the facts are before us we are not called upon nor would it be proper to announce a construction as binding upon either party to this litigation.

It is evident that the present judgment cannot be sustained. It should, therefore, be reversed and a new trial granted, with costs to the appellants to abide the event.

Van Brunt, P. J., O'Brien and McLaughlin, JJ., concurred.

Ingraham, J. (concurring) :

I concur with Mr. Justice Hatch, except so far as it seems to be intimated in his opinion that there was evidence which would justify a finding that the defendants were guilty of any false misrepresentations which would justify the plaintiff in repudiating the contract of May 8, 1899. The only representation testified to by the plaintiff which he said induced him to agree to the contract of May eighth was the defendant Hyde's statement that the pool profits amounted to 2,475 shares of stock, and that the plaintiff's share, under the contract of March 27, 1899, would amount to 361 and a fraction shares. He testified that he told Hyde that he would accept 361½ shares upon the representation that 2,475 shares was the only profit that there was belonging to the pool, and Hyde then drew up the contract of May eighth which was clearly intended as a substitute for the prior contract as to the compensation that plaintiff was to receive. The plaintiff's action was based upon the contract of March twenty-seventh and he asked for an accounting. In answer to this cause of action the defendants plead that the contract of March twenty-seventh was modified by the contract of May eighth, and that under that contract the plaintiff was entitled to receive a certain number of shares of stock which had been tendered to him and which they still hold for his account.

Assuming that the plaintiff was, upon proof by the defendants of the contract of May eighth, entitled to prove that that contract was obtained by fraud, the burden was upon him to prove that the representations were made to him upon which he relied in executing the contract of May eighth ; and that those representations were false and were known to be false by the person making them. I can find no evidence that the representations that Hyde was alleged to have made were false. The representations were that the pool profits were a certain number of shares of stock. There was proof that two days before a contract had been made in

relation to the sale of 9,000 shares of the stock at seventy-five per cent; but it does not appear that this 9,000 shares was pool stock. From the statements furnished by defendants it appears that the pool had bought 440 shares of stock at fifty-five and 5,000 shares at seventy-five, in addition to the 10,100 in which plaintiff was interested, and that at some time 9,000 shares had been sold at seventy-five; but under the contract of March twenty-seventh the plaintiff's interest was confined to the 10,100 shares of stock of the old company that the defendants had purchased at twenty-two dollars and fifty cents a share, and for which there had been substituted stock of the new company. In the contract of March twenty-seventh the defendants agreed to set apart for the plaintiff "15 per cent of whatever net profits estimated on the above basis may be found to have been realized from the sale of the pooled stock after the entire 10,100 shares have been pooled and sold. It is understood, however, that this 15 per cent interest relates only and applies solely to the 10,100 shares of stock of the new company and to the net profits, if any, to be derived from the sale thereof on the basis as above stated." The fact that the members of this pool subsequently bought other shares of stock which they sold at a profit, has nothing to do with the plaintiff's right to share in the profits realized from the sale of the 10,100 shares of the stock with the purchase of which he was concerned. The contract between Hyde and Taylor & Co. which was introduced in evidence provided for the sale of 9,000 shares of stock to Taylor & Co. by Hyde in the event that Taylor & Co.'s examination into the validity of the patents and the efficiency of the machines was satisfactory, this sale being, however, conditioned upon such an examination proving satisfactory to Taylor & Co:, and the consideration was to be paid in installments extending to November 1, 1899. Hyde agreed to pay to the new company to be organized $374,000 in cash, and to acquire by purchase or exchange 9,000 shares of the capital stock of the new company which he agreed to sell to Taylor and to perform other obligations provided for in the contract. This contract was made on May 6, 1899, two days before the agreement with the plaintiff was made, and as the sale of the stock to Taylor was based upon Taylor & Co.'s satisfaction with the examination of the patents and machines and imposed large

obligations upon Hyde, with no money to be received for some time thereafter, it was not proof that at that time there were profits which could be said to have accrued, to any portion of which the plaintiff would be entitled. By the modification of May eighth it was proposed to divide the stock instead of waiting to sell it and divide the profits, and to this the plaintiff agreed. I think that a finding that there was fraud in procuring this contract of May 8, 1899, would be opposed to the evidence. The court below proceeded upon the construction of the letter of May eighth, which we all agree was not justified, and I quite agree with Mr. Justice HATCH that for that reason the judgment should be reversed; but I do not agree with his statement that there was any basis in the testimony for a finding that the defendants were guilty of fraud.

I concur, therefore, in the reversal of the judgment.

Judgment reversed, new trial ordered, costs to appellant to abide event.