(43 Misc. Rep. 516.)

BANDMAN v. FINN.

(Supreme Court, Trial Term, New York County. May, 1904.)

1. CONTRACTS—NOVATION.

A purchaser of real property from executors agreed to pay a certain sum to one having a claim against the executors for commissions, in consideration of the release of the claim, and also agreed to pay a further sum in case the premises were sold. Later, and before the premises were sold, the purchaser offered to settle this latter claim by the payment of a smaller sum than that contemplated on sale, which offer was accepted. *Held*, that the person entitled under the original contract to commissions on sale of the property could not, after this agreement, recover the full amount which it was provided he should receive on sale, but that the latter agreement constituted a novation.

Action by Albert Bandman against William E. Finn. Judgment for plaintiff.

Harry Mack, for plaintiff.

James, Schell & Elkus, for defendant.

CLARKE, J. In May, 1902, the defendant purchased from the Hilton estate the premises Nos. 726–730 Broadway and Nos. 31–39 Lafayette Place. Herman Schmidt, a broker, had some claim against the executors of the Hilton estate, and, as a part of the transaction, the defendant signed on May 14, 1902, a paper which set forth the following:

"I, William E. Finn, in consideration of H. Schmidt executing a release of claim of commission to Horace Russell, and Edward D. Harris, as executors, etc., do hereby agree to pay to said H. Schmidt one thousand dollars on passing of title 726–730 Broadway and 31–39 Lafayette Place, which closing has been set down for May 15th, 1902, and to further pay him the additional sum of eighty-six hundred dollars on completion of roof of contemplated building on said premises. In the event of a sale of these premises I agree to pay said H. Schmidt said eighty-six hundred dollars on consummation of said sale."

The release was executed and the $1,000 paid. The contemplated building was not erected, so that the contract for the payment of the $8,600 remained dependent upon the future contingency of a sale. No amount was due, and there was no enforceable claim. In October, 1903, Schmidt placed the matter in the hands of Mr. Levy, of Arnstein & Levy, with instructions to get some settlement from the defendant. Schmidt offered to take various sums during the period of the negotiations. Finally, on the 23d of November, Finn told Mr. Levy he would pay $2,500 to Schmidt, and $250 as counsel fee to him. Levy reported this offer to Schmidt, who accepted it, and his acceptance was reported to Finn. This constituted a contract. An agreement was made to meet at Mr. Levy's office on November 25th, at 3 p. m., to close. Schmidt was at Mr. Levy's office a few minutes before 3. Mr. Levy drew a general release in his presence and said to him that Mr. Finn would want the contract of May 14, 1902, back, and asked him if he had it with him. Schmidt said "No," but he would get it, and be right back, and left the office. He never came back. About 3 Mr. Finn appeared and tendered two checks—one for $2,500 and the other for $250. At 4 o'clock that same afternoon Schmidt executed an instrument upon

which this suit is brought, by which, for the expressed consideration of $2,291.67, he assigned all his right, title, and interest to Albert Bandman, the plaintiff—

"In and to any claim for commission which I may have arising out of the sale of premises Nos. 726-730 Broadway and 31-39 Lafayette place * * * and particularly all my right, title and interest to the claim which I have against the said William E. Finn arising out of said sale, and as more particularly specified in the agreement made by the said William E. Finn, dated May 14, 1902, and hereunto annexed."

In the latter part of November, 1903, but some time after the negotiations between Schmidt and Finn, through Mr. Levy, were under way, Mr. Wanamaker was negotiating for a sale of the property through a broker, Mr. Weil. These negotiations culminated in a contract of sale being executed by Mr. Wanamaker on November 24th, which contract was delivered to Mr. Finn in the afternoon of November 25th. Mr. Levy knew nothing of these transactions, and Mr. Schmidt testified that he did not know of them till the day after. Under that agreement the sale was finally consummated on January 2, 1904, and on the 5th of January plaintiff, as the assignee of the contract of May 14, 1902, brought this suit for $8,600. At the close of the evidence, plaintiff moved for a direction of a verdict for the full amount; claiming that the transactions above set forth constituted a mere executory accord, and not a satisfaction, and as they were not completed by the receipt of the money by Schmidt, and the delivery of the contract and execution of the release, they fell to the ground. Defendant moved for the direction of a verdict for the plaintiff for $2,500, upon the ground that, as the contingency had not arrived, there was no sum due, and no enforceable claim, so that the transaction was not to be looked at as an accord and satisfaction, but as a novation—the substitution of a present, definite contract, under which a contingent liability was transformed into a present, enforceable debt, for a fixed sum—and that, as this constituted a detriment to Finn and an advantage to Schmidt, the contract was upon good consideration, and was consummated when the offer was accepted, and nothing further was necessary to fix the respective liabilities.

It seems to me that there is no question of accord and satisfaction in this case. There is not the slightest doubt that Schmidt had a contingent claim for a definite amount, of $8,600. But it was a mere contingent claim. He had held it for a year and five months. He might have been compelled to hold it indefinitely. There was no way in which he could hasten the happening of the event which would transmute the claim into a debt. He could not enforce it. No cause of action existed. He tired of waiting, and himself opened negotiations to procure present value. I cannot see that Finn owed him any duty in the premises to disclose what he was doing. While it is true that negotiations for a sale had commenced a few days before the agreement between Schmidt and Finn, they were not brought to a head till afterward, nor consummated for over a month. There was no fiduciary relation existing between them. Schmidt wanted to sell his contingency, and Finn had a perfect right to buy. The case falls clearly within the doctrine laid down in McIntosh v. Miner, 37 App. Div. 483, 55 N. Y. Supp. 1074:

"At the time this new agreement was made, there was no indebtedness by the defendants to the plaintiff. The original contract was yet to be performed, the time of performance not having arrived. If such a contract was actually made, by which the defendants became indebted to the plaintiff, * * * I can see no reason why it would not be a rescission of the prior contract. * * * This new contract is not pleaded as an accord and satisfaction of an existing obligation to pay a sum of money, but as an agreement to rescind an executory contract by a new contract, the obligations of which are assumed by the respective parties; and I can see no reason why that new contract is not valid, based upon sufficient consideration, capable of enforcement, by which the former contract between the parties was abrogated."

Cited and followed in Spier v. Hyde, 78 App. Div. 151, 79 N. Y. Supp. 699. This seems to me a clear case of rescission and novation. As the assignment in evidence from Schmidt to plaintiff is broad enough to cover this new contract, a verdict is directed for the plaintiff for the sum of $2,500. Judgment may be entered thereon, with costs.

Judgment for plaintiff, with costs.