GUSTAV A. KIRCHNER, APPELLANT, v. THE NEW HOME
SEWING MACHINE COMPANY, RESPONDENT.

*Release — not extended by its general words beyond the scope of its particular pro-
visions — does not cover damage of which the releasor was ignorant — mutuality
of the error.*

In an action brought to recover for the damage done to certain machinery in prem-
ises from which the defendant had unlawfully ejected the plaintiff, it appeared
that after the plaintiff was ejected from the premises the defendant continued
in possession thereof and allowed the machinery to be damaged through neg-
lect; that thereafter, the plaintiff having applied for the restoration of his
property, the defendant required, as a condition thereof, that he execute a
release of a certain claim made by him against the defendant for malicious
prosecution, and of a claim for $1,500, for which he had already brought suit.

The plaintiff consented to this and the defendant caused a general release to be
prepared, in which was inserted a particular clause and agreement that the
plaintiff would not interfere in any manner with any sales of machines thereto-
fore made by him for said company, nor with the collection by the company of
the moneys due for said machines sold.

After its execution the possession of the premises was delivered to the plaintiff,
and he discovered, what he had been before ignorant of, namely, that his
machinery had been damaged by neglect and through exposure to the elements.

*Held*, that the release did not discharge the defendant from liability for such
damage.

That the general words of the instrument would not be allowed to extend the opera-
tion of the particular provisions thereof.

That the release would not discharge rights of which the party executing it was
ignorant.

That the rule that to render a release inoperative the error must be mutual, did
not apply where one party sought to use it for a purpose not intended by the
maker.

APPEAL by the plaintiff Gustav A. Kirchner from a judgment of
the Supreme Court, entered in the office of the clerk of the county
of Kings, in favor of the defendant, on the 17th day of June, 1890,
dismissing the plaintiff's complaint after a trial at the Kings County
Circuit before the court and a jury.

The action was brought to recover the damages resulting from
the threats, promises and intimidations practiced by the defendant
and its agent against certain customers of the plaintiff, and from the
slandering of the plaintiff, and from the further act of the defend-
ant in opening and entering the plaintiff's store by its agent with

force, against the plaintiff's will and protest, and taking possession thereof, with its stock, contents and fixtures, and holding possession thereof for several months and allowing the property of the plaintiff therein to be damaged and destroying the good will of the business.

The defendant offered in evidence, among other things, the following release executed by the plaintiff:

" *To all to whom these presents shall come or may concern,* GREETING :.

" Know ye that I, Gustave A. Kirchner, of the city of Brooklyn, in the county of Kings and State of New York, for and in consideration of the sum of one dollar lawful money of the United States, to me in hand paid by the New Home Sewing Machine Company, the receipt whereof is hereby acknowledged, have remised, released and forever discharged, and by these presents do for myself, my heirs, executors and administrators, remise, release, and forever discharge the said The New Home Sewing Machine Company, its agents, servants, successors and assigns, of and from all and all manner of action and actions, cause and causes of actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or in equity, which against it or its agents or servants I ever had, now have, or which my heirs, executors or administrators hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these presents, and it is distinctly understood that I will not interfere in any manner with any sales of sewing machines heretofore made by me for said company, nor with the collection of any amounts due on said machines.

" In witness whereof, I have hereunto set my hand and seal, the 8th of February, in the year one thousand eight hundred and eighty-eight.

" G. A. KIRCHNER.  [SEAL.] "

Sealed and delivered in }
   the presence of    }

*M. L. Towns*, for the appellant.

*Osborn E. Bright*, for the respondent.

PRATT, J. :

The plaintiff appeals from a judgment of nonsuit. The testimony showed that plaintiff had, for some years, occupied a shop and store where he was engaged in the business of selling and repairing sewing machines, and where he also carried on other branches of business. Among other machines he sold those of defendant. The retail price was fifty-five dollars, of which twenty dollars went to defendant and the remainder to plaintiff.

The plaintiff testified that he considered the machines his " after he signed for them," and some support is given to that opinion by the fact that on one occasion defendant sued him and entered judgment in its favor " for sewing machines sold and delivered." As early as 1885 a dispute existed between the parties, plaintiff claiming that defendant owed him $1,000 on account. He kept back $604 of money collected, claiming to hold it as an offset to his claim. Being arrested, he executed to defendant a bill of sale of eight sewing machines and other property as security for any balance that should be found due it. He was then set free and restored to the possession of his goods. But no accounting took place, and it does not appear that the bill of sale was again referred to till it was produced on the trial of this action.

In 1887 plaintiff claimed that the balance due him was as much as fifteen hundred dollars, and brought a suit to enforce his claim. It appears that in the course of that litigation a motion was made to punish defendant for contempt, and a reference to take proofs was pending. While affairs were in that position a conference was had in the office of defendant between its president, city manager and other employees, where it was resolved to eject plaintiff from his store and take and hold possession. That was done by defendant's agents without legal authority, a policeman attending, as he expressed it, " to prevent a breach of the peace."

Numerous witnesses were examined. None of them testify that any claim of right was asserted on the part of defendant or its agents. After plaintiff was ejected, which required some violence, defendant continued in possession of the store, and, as subsequently

appeared, allowed the steam engines and other property to be destroyed by neglect. The plaintiff then began proceedings against Steele and Irving, agents of defendant, who expelled him from his store, which resulted in a warrant for its restoration. Before the warrant was obtained the landlord gave a lease to another agent of defendant, so that possession could not be delivered under the warrant. And various unfounded criminal charges were instituted against plaintiff by the company's agents, and clearly at the instigation and for the benefit of the company.

The result evidently aimed at by these various proceedings was at last produced, namely, to reduce the plaintiff to such distress that he could no longer contend against the company, and to compel him to make his peace with it at its terms. When he applied to it to restore his property, saying he could resist it no longer, it required, as the only conditions, that he execute a release of his claim against the company for malicious prosecution, and of his claim of $1,500. He consented, and the company caused a general release to be prepared, in which was inserted a particular clause and agreement not to interfere with the collection by the company of the moneys due for machines sold by plaintiff. It contained no other special clause, and in that form it was executed by plaintiff, whereupon defendant directed its agent in charge of the place to deliver possession to the plaintiff, which was done.

An examination then disclosed to plaintiff, what he had up to that time been ignorant of, viz., that his machinery had been damaged by neglect and by the elements, and a large part of his tools and other property, including sixteen machines, and a valuable recipe for decorating tin, removed, inflicting injuries to the amount of several thousand dollars.

Upon proof of these facts at circuit, the judge being of opinion that the claim was extinguished by the general release, directed a nonsuit, from which an appeal is brought.

There can be no question that the original taking was wrongful. The only suggested justification was under the "bill of sale" executed two years before; being for certain specific articles, that clearly could give no right to take property not included therein. Nor would that justify the personal assault. A further answer is that it was given as security for any balance that should be found

·due on an accounting which defendant afterwards refused to permit. From the time of such refusal the "bill of sale" could have no ·effect. Moreover, the judgment against Steele and Irving, agents ·of defendant, is conclusive evidence in this action that the taking was wrongful. They were acting for the company for its benefit, and in the line of duty. The principal is bound by an adjudication ·against the agent. (*Castle* v. *Noyes*, 14 N. Y., 329, 334.)

The scope of a release has been well settled. Numerous adjudications are to the effect that the general words will not be allowed ·to extend the operation of the particular words. This was held so long ago as 2 Rolle's Abridgment (409). It is so stated in 7 Comyns' Digest (m. p. 235); release of personal things (3, 5). *Henn* v. *Hanson* (1 Lev., 100); *Lyman* v. *Clark* (9 Mass., 235); *Millar* ·v. *Craig* (6 Beav., 433) are to the same effect. The rule is the same in law as in equity. If that rule be applied to the present case the release would extinguish only plaintiff's claim to the money due on machines sold by him.

Another well-established rule is that a general release will not be allowed to operate beyond the intention of the releasor.

As to matters not in contemplation, the minds of the parties have not met. (*Kirby* v. *Taylor*, 6 Johns. Ch., 252; *Mumford* v. *Murray*, 6 id., 452; *Parsons* v. *Hughes*, 9 Paige, 591.)

In *Post* v. *Ætna Insurance Company* (43 Barb., 353, 371, 388) parol evidence of the previous negotiations was admitted to show what the releasor intended to cut off. It is also a well-settled rule that a release will not cut off rights of which the releasor was ignorant. *Farewell* v. *Coker* (cited in *Cholmondeley* v. *Clinton*, 2 Merivale, 354) is an ancient case in equity where a release of "all lands under my father's will" was held not to cut off lands to which the releasor did not know she was entitled. *Lyall* v. *Edwards* (6 H. & N., 337) was at law, and a replication that at the time of ·executing the release the plaintiff did not know of the grievances now sued for, was held good. *Broderick* v. *Broderick* (1 P. Williams, 240); *Pusey* v. *Desbouvrie* (3 id., 316); *Ramsden* v. *Hylton* (2 Ves., Sr. 305); *Cholmondeley* v. *Clinton* (2 Merivale, 333), are to the same effect.

The suggestion that to render a release inoperative the error must be "mutual" is discussed in *Welles* v. *Yates* (44 N. Y., 528), and

shown not to apply where one party seeks to use an instrument for a purpose not intended by the maker. Such contract is declared fraudulent. The fact that defendant is a corporation does not relieve it from liability for the acts of its agents. (*Morton* v. *Met. Life Ins. Company*, 34 Hun, 366.) It was suggested at Circuit that as plaintiff knew he had been deprived of his goods by defendant, his ignorance of the fact that they had been removed or destroyed was not important. He did not know the deprivation was permanent. He was not bound to credit defendant with any wrong-doing of which he did not know. He had a right to suppose his property would be restored to him and in good order.

It is clear that the plaintiff's action is not barred for such injuries as he was ignorant of at the time he signed the release. The general terms of that instrument will not be allowed to operate upon any rights of action which are not covered by the particular clause and were not mentioned in the preliminary discussion.

The judgment must be reversed and a new trial granted. The defendant is not entitled to favor and the costs of the appeal must be paid by defendant to plaintiff.

BARNARD, P. J. :

This case should have gone to the jury. The defendant is a manufacturer of sewing machines. The plaintiff sold machines for the defendant. The precise nature of the arrangement is not very clear, but whether the plaintiff was a purchaser of the machines or was merely an agent to sell them, it seems clear that the price of the machines was not payable by plaintiff to defendant until after they were sold. Kirchner hired the store and had property of his own in it. The defendant arrested the plaintiff for misappropriation of moneys collected, and the plaintiff was put in jail. The plaintiff made a bill of sale of his property in the store, or of some of it, and was released. This bill of sale was given as security for any claim which the defendant might have against the plaintiff. The plaintiff after his release from jail began suit against the defendant to recover $1,500, which he claimed to be due him. If he was right in his claim, then the plaintiff has not misappropriated the defendant's money, for the claim he made was much larger than the amount which the defendant claimed to have been misappropriated. The

plaintiff commenced proceedings to punish the defendant for a contempt of court, the particulars of which do not clearly appear. The defendant then forcibly took possession of the plaintiff's store under the bill of sale, and of all the property in it, and kept it some three months. There were other legal proceedings taken in the meanwhile. On the 27th of February, 1888, the plaintiff applied to have his property restored. The defendant agreed to give the store and contents back, upon receiving a release of the plaintiff's claim for the $1,500, and from the action for false imprisonment pending, for there had been arrests made beside the arrest for misappropriation of money. The release drawn was a general release. There were circumstances surrounding the transaction which tended to show duress and oppression, and, also, that it was not intended to cover any right outside of certain specified claims. It did not cover a refusal to give back the property taken from the plaintiff, for that was the sole consideration of the papers, whatever was, in fact, intended to be released by it. The complaint alleges that this was not done and that certain property which was delivered back was in an injured condition.

The judgment should, therefore, be reversed and a new trial granted, costs to abide event.

Judgment reversed and new trial granted, costs to abide event.