GUSTAVE A. KIRCHNER, Appellant, *v.* THE NEW HOME
SEWING MACHINE COMPANY, Respondent.

Where a release is general in its terms and there is no limitation by way of
recital or otherwise, the releasor may not prove an exception by parol;
the instrument itself is the only competent evidence of the agreement of
the parties, unless avoided for fraud, mistake, duress or some like cause.

So, also, if the words of a release fairly import a general discharge, their
effect may not be limited so as to exclude a demand simply upon proof
that at the time of its execution the releasor had no knowledge of the
existence of the demand.

*It seems,* however, when a general release is pleaded as an affirmative
defense to a cause of action, plaintiff may show that by a mutual mis-
take of the parties, or a mistake on his part and fraud on the part of
defendant, the cause of action was included in the release, contrary to
the agreement and intent of the parties, or in case of fraud, contrary
to his intent.

*It seems,* also, that the intentional concealment by the releasee of a cause
of action existing in favor of the releasor, of which he was ignorant,
will be sufficient to estop the former from insisting upon any advantage
to be derived from the mistake of the latter.

In an action by plaintiff, who had been defendant's agent in the sale of
sewing machines, to recover damages for a forcible eviction from his
store and detention of the premises from him, and for injuries to
his property in the store, defendant proved and gave in evidence
a general release, under seal, executed by plaintiff after the cause
of action arose, absolving the defendant from all liability for any
demand or cause of action which plaintiff might have against it, either
upon contracts or in tort, and especially for all trespasses committed by
it or damages for which it might be responsible to plaintiff. At the
end of the release was a provision to the effect that it was understood
between the parties that plaintiff should not interfere in any manner
with any sales of sewing machines theretofore made by him for defend-
ant, or with collections thereon. Plaintiff claimed that part of the con-
sideration of his release was the restoration to him of his store and
property and that he then had no knowledge that any of the property
had been injured, destroyed or disposed of by defendant. There was
evidence showing the existence of various controversies and litigations
between the parties at the time the release was executed, and tending to
show that it was not the intention to include in the release the cause of
action sued upon. The court charged that the release would not be
allowed to operate upon any right of action not covered by the par-
ticular clause and not mentioned in the preliminary discussions which
led up to the release; also, that it did not cut off plaintiff's right to

recover for any injury to him or his property not known to him at the time of its execution. *Held*, error.

The distinction in the rule as to the availability of parol evidence to contradict or modify the instrument, applicable to releases and that applied to receipts pointed out.

(Argued June 1, 1892; decided October 4, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 14, 1891, which affirmed a judgment in favor of plaintiff entered upon a verdict, and affirmed an order denying a motion for a new trial, and also affirmed an order denying a motion for treble damages.

This action was brought to recover damages for certain alleged trespasses.

*George S. Hamlin* for appellant. The court erred in its charge to the jury in respect to the release. (*Stearns* v. *Tappin*, 5 Duer, 294; *McCrea* v. *Purmont*, 16 Wend. 473; *Acker* v. *Phœnix*, 4 Paige, 307.) Even assuming that there was evidence of mistake on the part of the plaintiff, it cannot avail to sustain the judgment in this case. (*Lyman* v. *U. Ins. Co.*, 17 Johns. 377; *Nevius* v. *Dunlap*, 33 N. Y. 680; *Mead* v. *F. Ins. Co.*, 64 id. 455; *Ford* v. *Joyce*, 78 id. 618; Bispham's Prin. of Equity [2d ed.], 247; Kerr on Fraud & Mistake, 407; *Penny* v. *Martin*, 4 Johns. Ch. 566.) Even if evidence of fraud or mistake existed, it would not be available for another reason. The plaintiff did not restore, or offer to restore, what he received as a consideration for the release. (*Gould* v. *Nat. Bank*, 86 N. Y. 79; *Thayer* v. *Turner*, 8 Metc. 550; *Cobb* v. *Hatfield*, 46 N. Y. 533; *McMichael* v. *Kelmer*, 76 id. 36.)

*M. L. Towne* for respondent. The original taking was wrongful. (*Castle* v. *Noyes*, 11 N. Y. 329.) The release was ineffectual against wrongs of which plaintiff was ignorant at the time of its execution. (*Lyman* v. *Clarke*, 9 Mass. 235; *Farewell* v. *Coker*, 2 Merr. 353; *Post* v. *E. Ins. Co.*, 43 Barb.

353; *Butcher* v. *Butcher,* 4 B. & P. 113; *Wright* v. *Russel,* 2 Wills. 350; *Cols* v. *Knight,* 3 Mod. 277; *Barclay* v. *Lucas,* 1 D. & E. 291; *Miller* v. *Craig,* 6 Beav. 433; *Lindo* v. *Lindo,* 1 id. 496; *Turner* v. *Turner,* L. R. [14 Ch. Div.] 829; *Mumford* v. *Murray,* 6 Johns. Ch. 452; 39 N. Y. 202; 64 Barb. 608; *Parsons* v. *Hughes,* 9 Paige, 591.) The rule that a release cannot be relieved against unless the releasee shares the mistake, is applicable only when the party claiming a literal fulfillment is honest. ( *Welles* v. *Yates,* 44 N. Y. 528, 529.)

Maynard, J. The plaintiff alleges, as the grounds of his cause of action, a forcible eviction by the defendant from premises occupied by him as a store, at 282 Grand street, Brooklyn, December 3, 1887, and a forcible detention of the premises from him until February 8, 1888, and the injury to his stock of goods, fixtures, machinery, and other personal property in the store at the time defendant took possession, which were either removed, destroyed, or seriously damaged by the acts of the officers and agents of the defendant. He also claims that his business was broken up by this unlawful interference by the defendant.

The plaintiff gave evidence tending to establish these various grounds of recovery. The defendant denied the commission of the trespasses, and set up as an affirmative defense and proved upon the trial a general release under seal executed and acknowledged by the plaintiff February 8, 1888. This instrument in terms absolved the defendant from all liability for any demand or cause of action which the plaintiff might have against it, either upon contract or in tort, and especially for all trespasses committed by it, or damages for which it might be responsible to the plaintiff. The cause of action in suit here then existed, and the release was, upon its face, sufficiently comprehensive to include it within the scope of its operation.

It contained at the end a special provision to the effect that it was understood between the parties that the plaintiff should not interfere in any manner with any sales of sewing machines

theretofore made by him for the defendant, nor with the collection of any amounts due on such machines.

One of the points in controversy between the parties was the right of the plaintiff to control such sales and make the collections. When the release was executed the plaintiff had claims against the defendant amounting to $2,500 for services rendered and for sums due him for sewing machines sold, the proceeds of which had been collected or received by the defendant. The defendant had claims against the plaintiff amounting to $2,300, and a bill of sale of a part of the property in the store to secure upwards of $1,000 of this indebtedness. There was also an action pending in the City Court brought by the plaintiff against the defendant in October, 1887, for an accounting in which he claimed that the defendant owed him $940, after liquidating his indebtedness to it; and in this action he sought to have the defendant perpetually restrained from interfering with the personal property; the bill of sale canceled; and a reconveyance directed to him. A preliminary injunction order had been granted in the action, and a proceeding was then pending to punish the defendant for a contempt of court in violating it. There had been a long and bitter contention between the parties and the defendant had repeatedly caused the arrest of the plaintiff upon criminal charges; which had, invariably, been dismissed as not sustained; and it is to be inferred from the evidence, that there was then pending in some court an action brought by the plaintiff to recover damages for false imprisonment or malicious prosecution, because of these groundless criminal proceedings.

As one of the considerations of the release by the plaintiff to the defendant, the latter contemporaneously executed a like general release to the plaintiff.

The plaintiff also claims that a part of the consideration of his release, was the restoration to him of his store and personal property, and that he then had no knowledge that any of the property had been injured, destroyed, or disposed of by the defendant. He had been forcibly evicted and kept out of

possession of the store where the property was, by the defendant's agents, and while he had obtained judgment against them in a proceeding for forcible entry and detainer in the police court, they had procured from the landlord the execution of a new lease to another employe, and he was thus prevented from entering upon the premises and ascertaining the condition of the personal property. He expected when he regained possession of it, upon the execution of the release, to find it all still in the store and in as good order as when the defendant unlawfully seized it.

It is unnecessary to go further into the details of the voluminous proofs in the record, except to note, that there is evidence, which tends to show that the plaintiff did not intend to discharge the cause of action upon which this suit was brought, and that the defendant's officers and agents did not intend to include it in the release; or, if they did, that they concealed such intention from the plaintiff, and also concealed from him the condition of the personal property; and that the plaintiff understood that the release only embraced the actions then pending; and that the defendant knew that such was his understanding of its contents and effect.

The trial court following the opinion of the General Term upon a former appeal (59 Hun, 186) charged the jury, that if the only subject of negotiation between the parties was the release by the plaintiff of his rights under the action in the City Court and his claim for false imprisonment, then the general terms of the release would not be allowed to operate upon any right of action, which was not covered by the particular clause, and was not mentioned in the preliminary discussion that led up to the release. This proposition we think does not correctly state the law applicable to this branch of the case.

What is here denominated "the particular clause" apparently has reference to the concluding paragraph of the instrument which, as we have seen, is a declaration that the plaintiff shall not interfere with certain sales which had been made, or the collections on account of them.

It is undoubtedly true that the whole of a release must be considered in construing its provisions, and, if it is general in its terms, it may be controlled and limited in its effects by the limitation in the recital. (2 Parsons on Cont. [6th ed.] 714.)

The rule is very clearly stated by the court in *Jackson* v. *Stackhouse* (1 Cow. 126) : " It is well settled that where there are general words alone in a deed of release they shall be taken most strongly against the releasor ; but where there is a particular recital, and then general words follow, the general words shall be qualified by the particular recital." The reason is obvious. The recital is presumed to express the intention of the parties as to the scope of the deed, and if other matters are intended to be included specific language must be used declaratory of such intent.

There are no recitals or particular words in this release to which its application can be restricted. It would be difficult to make it more general or sweeping in all its parts. It is a comprehensive discharge of every liability of the defendant, by whatever name known, arising " by reason of any matter, cause or thing whatsoever from the beginning of the world " to the date of the instrument. The final clause with reference to the sales and collections is not properly a part of the release. It is more of the nature of a covenant to refrain from the doing of certain specified acts, and it is manifest that the parties never intended to restrict the effect of the writing in such a way as to entirely destroy its character as a release. To so construe it would render its most important provisions meaningless and inoperative. It would not even bar the plaintiff's further prosecution of the suits in the City Court and for false imprisonment, and he concedes that they were intended to be included.

Nor was the effect of the release necessarily limited to the subjects considered in the preliminary discussion that led up to it. If the parties intentionally embraced in the instrument demands not previously suggested or all subsisting causes of action when only certain of them had been discussed, it would be operative according to its terms and unassailable. Releases

and other deeds and written contracts do not differ in this respect. All preliminary negotiations are presumed to be merged in them, and from the time of their execution they must be deemed to be the only competent evidence of the agreement of the parties upon the subjects to which they relate unless avoided for fraud, mistake, duress or some like cause. In Parsons on Contracts the rule is stated to be (2 vol. [6th ed.] 715): "If a plaintiff is met by a general release under his seal to the defendant, he cannot set up an exception by parol." In the early case of *Pierson* v. *Hooker* (3 John. 68) the release was " of and from all debts and demands of every nature and kind whatsoever," and evidence was offered and excluded at the trial to show that at the time of its execution it was not intended to include the demand in suit, and Chief Justice KENT held the ruling correct, saying (p. 70): " The instrument is general and comprehensive, and expressly reaches to every debt and demand of every kind. To show by parol proof that it was not so intended, is to contradict or explain away the instrument, which is contrary to the established rule of law." There is just here a wide difference between a receipt and a release, and whatever confusion there may be in the authorities upon this point has resulted from a failure to observe the distinction.

The trial judge, upon the request of the plaintiff, and, as he states, under the decision of the General Term, also charged the jury that the release did not cut off the plaintiff's right to recover for any injury to him or his property, of which he did not know at the time he signed it. For the same reasons we think this direction was erroneous. It is competent for a party by his own act to forego a recovery for unknown as well as known causes of action. Construing the language of a release, as we must, most strongly against the grantor, if words are used fairly importing a general discharge, their effect cannot be limited by the bare proof that the releasor had no knowledge of the existence of the demand in controversy. The operation of such an instrument cannot be made to depend upon oral testimony as to the knowledge of the creditor when he executed

it of the liability which he subsequently seeks to enforce. It might happen that he did not then know or recollect that his debtor owed him anything, and the writing under such a construction, would be wholly inoperative, although many causes of action may have at the time actually existed.

While there must be a reversal of the judgment, it does not follow that this release is conclusive or unavoidable. It has been set up and proven as an affirmative defense, and the plaintiff, under section 522 of the Code, is to be deemed to have controverted the defense by traverse or avoidance, as the case may require, and he may have the benefit of whatever evidence he can produce, to sustain such traverse or avoidance. (*Meyer* v. *Lathrop*, 73 N. Y. 315.)

If the plaintiff can show that by a mutual mistake of the parties, or by what is its equivalent, a mistake on his part and fraud on the part of his adversary, the present cause of action is embraced in the release, contrary to the intent of the parties, or contrary to his intent in case fraud is proven, he is entitled to an instruction to the jury to the effect that the release does not bar his right to recover.

Generally speaking, whatever proofs would be regarded as sufficient to enable the plaintiff to maintain an action for the reformation of the release, so as to except from its provisions the demand in suit, would be available to him in this action by way of avoidance of its terms. There are numerous cases in this court determining when such an action will lie and what evidence is required to support it. (*Bryce* v. *Lorillard Ins. Co.*, 55 N. Y. 240; *Maher* v. *Hibernia Ins. Co.*, 67 id. 283; *Paine* v. *Jones*, 75 id. 593; *Kilmer* v. *Smith*, 77 id. 226; *Smith* v. *Truslow*, 84 id. 661; *Albany City Sav. Bk.* v. *Burdick*, 87 id. 40.)

Upon such an issue evidence of the preliminary negotiations of the parties, and of the ignorance of the plaintiff of the injury to his property is important. The fraud of the defendant may have been purely passive. An intentional concealment by its officers and agents of the purport of the instrument, or of the destruction of or injury to plaintiff's prop-

erty, which he was seeking by means of the settlement and release to regain, or an omission to inform him of his mistake, if they perceived that he was in error as to its provisions, would be sufficient to estop the defendant from insisting upon any advantage to be derived from the mistake of the plaintiff.

This is not the case of an attempted rescission of a contract, upon the ground of fraud and the plaintiff is not, therefore, under any obligation to return what he has received, or to tender restoration. He is not seeking to disaffirm the agreement actually made, but merely objecting to the application of the written evidence of it to a subject which the parties did not intend to include in it. (*Wells* v. *Yates,* 44 N. Y. 531.)

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed. _____