MAX TROPP, Appellant, *v.* SAFEGUARD SERVICE CORP. and BERNARD STEGMAN, Respondents.

First Department, January 30, 1942.

*Herbert E. Hoffman* of counsel [*Jacob D. Fuchsberg* with him on the brief; *Henry E. Cohen & Fuchsberg*, attorneys], for the appellant.

*Martin N. Whyman* of counsel [*Louis L. Resnick*, attorney], for the respondents.

GLENNON, J. The plaintiff, according to his complaint, was injured by a taxicab owned by the corporate defendant and operated by defendant Bernard Stegman on Sunday, December 29, 1940, while crossing One Hundred and Sixty-first street at one of its intersections in the county of Bronx. On the same day a representative of the defendants called to see him at his home. At the time plaintiff, by his affidavit, has shown that he was in bed in a state

of shock, suffering from pain in various parts of his body, particularly from his right knee which appeared to him merely to be bruised. The same representative again called on Monday.

The day following he offered plaintiff $125 in settlement. Plaintiff informed the claim agent that he was afraid the injuries might be more serious than was apparent, whereupon the latter stated, " that his offer to settle was only for those injuries which I then knew about and so far as any complications or aggravations or anything that might arise in the future, that it was impossible to make any claim or adjust any claim for something that hadn't yet arisen and that the money he was offering me was only for the injuries I knew about."

It then appears that the plaintiff accepted the sum offered upon the representations which were made by defendants' agent who informed him that it was necessary to sign certain forms which " would constitute a receipt to show the company that he had paid me the money in connection with the accident."

It is asserted by plaintiff that he could not read English very well and it became necessary to call in a man from a neighboring apartment to act as a witness. Plaintiff contends that he did not know what the paper contained as it was not read to him, and that, in effect, he did not intend to release his claim for " any complications or aggravations " of the injuries which thereafter might develop. It should be noted at this point that the facts, to which reference has been made, appear in plaintiff's affidavit and were not contradicted in any manner upon the motion by the agent who acted for the defendants.

A few days later X-rays were taken of his knee and he then learned that he had sustained " a most serious, splintering fracture " of his patella in addition to other injuries. He was removed to a hospital where an open operation was performed on his knee. Due to loss of blood and his run-down condition pneumonia developed and he was confined to bed for a long period of time.

The defendants, relying upon the release thus obtained, moved to dismiss the complaint pursuant to rule 107 of the Rules of Civil Practice on the ground that the claim set forth in the complaint had been released. The motion to dismiss was granted and the order appealed from was entered. We believe that the court erred in so ruling.

The situation here outlined is similar to that which was before the Court of Appeals in *Farrington* v. *Harlem Savings Bank* (280 N. Y. 1). There the instrument was executed four days after the accident. Plaintiff said that he had been informed that the paper he had signed was merely a receipt and that the money given to

him was to reimburse him for his doctor's bill. The only known injury was a scalp wound and some minor bruises. Later it was discovered that he was suffering from a fracture of the humerus of the left arm. In writing the opinion for the court, Judge HUBBS said in part:

" At the time of the alleged settlement neither the claim agent nor the plaintiff knew of any injury except the superficial injuries referred to. No doubt the plaintiff had a perfect right to agree to settle for the injuries which were known and for all other injuries which might result, and such an agreement would be binding upon him no matter how serious the result of the injuries might thereafter turn out to be, provided the agreement was fairly and knowingly made.

" The complaint having been dismissed, the question here presented is whether there was any evidence that the plaintiff was induced by fraud or mistake to sign the instrument. We believe there was evidence which required the court to submit that question to the jury. Plaintiff testified that he was busy waiting on customers, that the claim agent laid the paper on a safe and asked him to sign the receipt and that he signed it without reading it; also that the payment of thirty dollars was to pay the doctor's bill. There is other evidence in the case having a bearing upon the question."

In *Barry* v. *Lewis* (259 App. Div. 496) the Appellate Division, Fourth Department, reversed a judgment which had been entered dismissing the complaint on the ground that the claim had been released. Mr. Justice CUNNINGHAM said in part:

" The release which plaintiff signed purported to release liability for not only the known injuries but also for those which were unknown and might thereafter develop. The plaintiff did not know that the release contained such provision and did not knowingly agree to be bound by it. Benson [the insurance adjuster] did not intend that the release should cover unknown injuries and a finding of mutual mistake is warranted upon the evidence. However, if Benson did intend that the release should cover unknown injuries, he knew that the plaintiff was unaware of such provision and that she signed the release in ignorance thereof. Under such circumstances it was his duty to tell her that the release contained a clause releasing the defendants from liability for any injuries which might thereafter develop or become known. (*Kirchner* v. *N. H. S. M. Co.*, 135 N. Y. 182.)

" The law is well settled that when a release is signed without any intention of the parties to release liability for injuries not known, such release will not be a bar to an action to recover for the unknown injuries. * * *."

We believe that the facts outlined by the plaintiff indicate quite clearly that there are questions of fact in this case which can only be decided after a trial of the issues. Under the circumstances, the order dismissing the complaint should be reversed, with twenty dollars costs and disbursements, and the motion denied, with leave to the defendants to answer within ten days after service of order on payment of said costs.

O'MALLEY, TOWNLEY and UNTERMYER, JJ., concur; MARTIN, P. J., dissents.

Order reversed, with twenty dollars costs and disbursements, and motion denied, with leave to the defendants to answer within ten days after service of order on payment of said costs.