**MICHAEL ROSE PRODUCTIONS, Inc., Plaintiff,**

v.

**LOEW'S INCORPORATED, Paramount Film Distribution Corporation, Twentieth Century Fox Film Corporation, R.K.O. Radio Pictures, Inc., Warner Bros. Pictures Distributing Corporation, Universal Film Exchanges, Inc., Columbia Pictures Corporation and United Artists Corporation, Defendants.**

United States District Court
S. D. New York.
June 18, 1956.

Aaron E. Koota and Irving Perlin, New York City, for plaintiff. Francis T. Anderson, Philadelphia, Pa., of counsel.

Simpson Thacher & Bartlett, New York City, for defendants other than Columbia Pictures Corp., Albert C. Bickford, Cyrus R. Vance, William J. Manning, New York City, of counsel.

Schwartz & Frohlich, New York City, for defendant Columbia Pictures Corp., Myles J. Lane, New York City, Bernard R. Sorkin, Brooklyn, N. Y., of counsel.

HERLANDS, District Judge.

Pursuant to the direction contained in the Court's decision and opinion filed March 21, 1956 (reported in 141 F.Supp. 257), the parties have taken the depositions of those representatives of plaintiff and defendants who have a personal knowledge of the execution of plaintiff's general release involved herein and the circumstances leading to its execution. Defendants have renewed their motion for summary judgment. The depositions of six witnesses amount to one hundred and sixty-two pages. Lengthy oral argument has been had. Extensive affidavits and briefs have been submitted by the parties. The entire record has been reexamined. This analysis requires the conclusion that the motion for summary judgment should be denied.

The extent to which a general release may be vitiated by proof of facts extrinsic to the release involves the resolution of competing public policies. The social utility of general releases, as a technique to effect absolution from liability should be preserved. On the other hand, there may be exceptional situations where, in the interest of justice, the enforceability of a particular general release should be litigated.

The relative evaluation of these policies in the factual context of a specific case may itself be subject to those differences of opinion that prevail even among the most learned judges. Cf. Kelcey v. Tankers Co., 2 Cir., 1954, 217 F.2d 541.

Certain general principles, however, have become axiomatic:

■ 1. Ignorance of a claim is not enough to avoid a general release, as distinguished from a special release. See Kirchner v. New Home Sewing Machine Co., 1892, 135 N.Y. 182, 188–189, 31 N.E. 1104; Vines v. General Outdoor Advertising Co., 2 Cir., 1948, 171 F.2d 487, 492.

■ 2. The intent of the parties is to be gathered from the release as a whole. Eagle Lion Films v. Loew's Inc., 2 Cir., 1955, 219 F.2d 196, 198; Murphy v. City of New York, 1907, 190 N.Y. 413, 83 N.E. 39.

■ 3. Parol evidence is not admissible to prove the parties' intent and thus to vary the release, in the absence of fraud, mistake or duress. 9 Wigmore, Evidence, §§ 2413, 2415, 2417 (3rd ed. 1940); 3 Corbin, Contracts § 580, p. 257 ff (1951); 5 Williston, Contracts, § 1552, p. 4350 (Rev. ed. 1937).

■ 4. Where there has been a mutual mistake or unilateral mistake by one party and fraud by the other party, the party who executed the general release as a result of such mistake may sue to reform the release or may avoid the release when the release is pleaded as an affirmative defense by the other party. Kirchner v. New Home Sewing Machine Co., 1892, 135 N.Y. 182, 31 N.E. 1104. Cf. Keeton, Cases and Materials on Fraud and Mistake (1954) 101–117.

In the Kirchner case, supra, the New York Court of Appeals had before it a general release executed by plaintiff in favor of defendant, one of the considerations of which was a like general release executed contemporaneously by defendant in favor of plaintiff. The cause of action asserted by plaintiff had arisen two months before the date of plaintiff's general release and was in existence at the time of that release. At the time of

the exchange of the mutual general releases, there were other difficulties and litigation between the parties, in addition to the cause of action in suit. Judge Maynard, for a unanimous court, said, 135 N.Y. at pages 189–190, 31 N.E. at page 1106:

"If the plaintiff can show that by a mutual mistake of the parties, or, by what is its equivalent, a mistake on his part and fraud on the part of his adversary, the present cause of action is embraced in the release, contrary to the intent of the parties, or contrary to his intent in case fraud is proven, he is entitled to an instruction to the jury to the effect that the release does not bar his right to recover. Generally speaking, whatever proofs would be regarded as sufficient to enable the plaintiff to maintain an action for the reformation of the release, so as to except from its provisions the demand in suit, would be available to him in this action by way of avoidance of its terms. * * * Upon such an issue evidence of the preliminary negotiations of the parties, and of the ignorance of the plaintiff of the injury to his property, is important. The fraud of the defendant may have been purely passive. An intentional concealment by its officers and agents of the purport of the instrument, or of the destruction of or injury to plaintiff's property, which he was seeking by means of the settlement and release to regain, or an omission to inform him of his mistake, if they perceived that he was in error as to its provisions, would be sufficient to estop the defendant from insisting upon any advantage to be derived from the mistake of the plaintiff."

In view of the foregoing, it is clear that the plaintiff in the case at bar has the right to present evidence tending to establish the following propositions:

1. *Mutual mistake:* That plaintiff did not intend to discharge the anti-trust claim (upon which suit has now been brought) when it executed the general release, *and* that defendants likewise did not intend to include that claim in the release; or,

2. *Unilateral mistake by plaintiff and passive fraud by defendant:* That plaintiff did not intend to discharge the anti-trust claim when it executed the release, but that defendants did intend to include that claim in the release and that defendants concealed their own intention from plaintiff, knowing that plaintiff's understanding of the contents and effect of the release was that it embraced only the pending New York Supreme Court action.

■ Evidence of the preliminary negotiations of the parties leading to the execution and delivery of the general release would be admissible as bearing upon the intentions of the parties. Such evidence has been presented to the Court by both parties herein.

Plaintiff's attempt to avoid its general release thus poses issues of subjective fact. The resolution of those issues requires an exploration of the state of mind of the plaintiff and the defendants who received plaintiff's general release— their knowledge and intention at the time that plaintiff's general release was negotiated, executed and delivered. Moreover, their credibility with respect to such testimony is a crucial issue.

State of mind, knowledge and intention can generally be established only by circumstantial evidence. Hence, the ultimate findings of fact—as to mutual mistake or unilateral mistake and fraud—must be based primarily upon inferences to be drawn from testimony whose probative value should be determined upon a courtroom trial, and not mere affidavits and depositions.

This is particularly so where, as here, some of the material facts are peculiarly within defendants' knowledge. Subin v. Goldsmith, 2 Cir., 1955, 224 F.2d 753, certiorari denied 1955, 350 U.S. 883, 76 S.Ct. 136; Alvado v. General Motors Corp., 2 Cir., 1955, 229 F.2d 408.

■ The process of culling the credible wheat from the incredible chaff is not included within the "legal invention" [1] of summary judgment.

Motion for summary judgment denied.

---

[1] "Summary judgment represents a most useful legal invention to save time and expense, by the avoidance of a trial, when there exist no material fact-issues." But where "the credibility" of witnesses is "crucial," the parties should not be deprived of a "live trial" at which "the trial court could observe the witnesses' demeanor in evaluating their testimony." Vermont Structural Slate Co., Inc., v. Tatko Brothers Slate Co., Inc., 2 Cir., 233 F.2d 9, 10, per Circuit Judge Frank.