Jacob Makkowitz, J.
The petitioner moves for an order staying arbitration as to the respondent Bernard Tabakin and limiting the arbitration between the petitioner and the respondent Tableau Television, Ltd., to claims or demands arising from transactions occurring after June 29,1953 and staying the arbitration as to that respondent in all other respects.
By its agreement dated July 14, 1952 with the respondents the petitioner undertook the distribution of a series of television films which the respondents were to produce. Petitioner was to, and did, finance the production to the extent as agreed and the respondents were to supply any further required financing. Distribution fees were to be allocated to the petitioner for its recoupable advances, to the respondents and others for their recoupable advances, to the petitioner on account of its distribution fees, and the balance to the respondents in that order. Respondents were required to deliver to the petitioner within 90 days of completion of each film an itemized statement of the cost of production. Petitioner was required to deliver to the respondents monthly statements showing gross proceeds of distribution, its production advances, its expenses and the allocations made of distribution proceeds received.
On June 29, 1953 respondent Bernard Tabakin executed a release in broad terms which discharged and released all claims and contracts in the following language: 1 ‘ from all * * * *335 debts, dues, * * * accounts, reckoning, * * * covenants, contracts, controversies, agreements, promises, * * * claims and demands whatsoever, in law, in admiralty or in equity, which * * * he ever had, now has or * * * hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to April 1, 1953. This release may not be changed orally.’’ Respondent Tabakin also engaged in an employment agreement with the petitioner dated April 1, 1953.
Respondents contend that when the documents were executed, only a right of accounting was available to them which was, however, futile, since nothing was then due to them; no claims had been made, were urged or in dispute; and no claim of right of accounting or otherwise had matured or could have matured. It is clear beyond doubt that negotiations were extended and thorough. A situation of financial stress had arisen while petitioner, already having made advances far in excess of the agreed requirement, was called upon to forbear under the agreement and to render further financial assistance. Nevertheless, respondents contend that the instruments were intended to release and discharge only such claims as Tabakin may have had under a prior employment agreement without affecting the distribution contract in any manner whatsoever. The query naturally suggests itself why the respondent Tableau Television, Ltd., was required to join in any measure whatever in the negotiations and agreements affecting only the relationship between the petitioner as employer and the respondent Tabakin as employee and their respective rights pursuant to such employment as it did by its letter of June 29, 1953. The equally obvious answer is petitioner’s natural concern at that time that resolution be reached of petitioner’s position with respect to advances already made by it, of the claim of respondents of advances made by them and of the propriety of any allocation already made by petitioner of distribution fees received. In this sense the subsidiary claims arising or which may be asserted upon the basis of the accomplished operation of the agreement are not necessarily in futuro but were of immediate concern in stabilizing the situation as it was found when petitioner’s further indulgence was requested. Accordingly, it was not necessary that the items of account should be projected into the discussions as in the surrounding circumstances the situation was to be stabilized and the contract as to the respondent Tabakin was to be discharged and a cut-off date for any claim of right to accounting was to be provided for the respondent Tableau Television, Ltd.
*336 To the extent a release has discharged a claim or contract, there can be no arbitrable issue (Matter of Brookside Mills [Raybrook Textile Corp.], 276 App. Div. 357; Matter of International Assn. of Machinists [Cutler-Hammer, Inc.], 271 App. Div. 917, affd. 297 N. Y. 519). There can be no question that as to Tabakin the release was intended to end the life of the contract (Matter of Sanders [New York Joint Bd.], 280 App. Div. 781). Apart from the question whether any dispute surrounding the release is arbitrable or whether the right to arbitration may be revived by reformation of the release, there is no sufficient showing to create an issue upon any possible claim of inadvertence, accident, mutual mistake or fraud in reaching a release so broad in its terms. The question is not what the parties intended but what a release wholly unambiguous expresses (Lucio v. Curran, 2 N Y 2d 157). If Tabakin intended to have a future accounting the release should have been so phrased as to provide therefor (Porter v. Commercial Cas. Ins. Co., 292 N. Y. 176; Kirchner v. New Home Sewing Mach. Co., 135 N. Y. 182; Matter of Binger [Thatcher], 304 N. Y. 627; Knapp Engraving Co. v. John Post Constr. Corp., 107 N. Y. S. 2d 328, affd. 280 App. Div. 763).
With respect to the respondent Tableau Television, Ltd., the petitioner relies upon its letter of June 29, 1953 which is as follows:
“ This is to acknowledge that we have read the agreement of April 1, 1953 by and between your corporation and Bernard Tabakin, the general partner of the undersigned partnership and that we do hereby approve and consent to each and every term and condition in the same.
“We do hereby further acknowledge that our sole and only interest in the aforesaid contract and/or in any negotiations heretofore had with PSI-TY, Inc. is our percentage of the distribution fees in connection with the television series known as ‘ China Smith ’ and ‘Play of the Week ’ as set forth in the aforesaid contract of April 1, 1953 and that we have no other claims or demand against your corporation.”
It is to be noted that despite the time when the various documents are dated, they were executed to take effect as of April 1, 1953 which is the date of the employment agreement then made between the petitioner and the respondent Tabakin. That agreement provided, among other things, that Tableau Television, Ltd., of which the respondent Tabakin is the general partner, shall receive a sum equal to 10% of the 100% of distribution fees as and when received by the petitioner for the sales and distribution of two certain series of television movies.
*337 It is clear from the surrounding facts and circumstances, from the fact that Tabaldn was the general partner of Tableau Television, Ltd., the purpose to be achieved by the transactions evidenced by the writings dated June 29,1953 and the provisions of paragraph 15 of the employment agreement that the situation was stabilized with respect to Tableau Television, Ltd., but the cut-off date is April 1,1953 and not June 29,1953, as contended by petitioner. The motion is granted as to Tabakin and as to Tableau Television, Ltd., also, but as of April 1, 1953.
Settle order.