OXFORD COMMERCIAL CORPORATION, Appellant, *v.* FRED LANDAU et al., Individually and as Copartners Doing Business as FRED LANDAU & Co., Respondents.

First Department, April 19, 1962.

*Albert Adams* of counsel (*Ferris, Adams & Creidy,* attorneys), for appellant.

*Boris Kostelanetz* of counsel (*Corcoran, Kostelanetz, Gladstone & Lowell,* attorneys), for respondent.

*Per Curiam.* The complaint in this action has been dismissed upon a holding that the causes of action therein stated have been released by plaintiff. We conclude that triable issues are presented and that the pleading may not be summarily dismissed.

Defendants are accountants. The two principal stockholders of plaintiff, prior to forming the corporation, expressed to defendants a desire to enter the commercial financing business. According to the complaint, defendants informed these individuals that one Carlin, a man of integrity, conducted an extensive financing business with which defendants were familiar; that if the individuals should decide to enter business with Carlin

defendants would look after their interests as sole accountants for the new corporation. Thereafter plaintiff corporation was organized pursuant to agreement made by Carlin, one of his corporations, and the two individuals. The latter advanced substantial sums of money and their respective wives agreed to loan further sums to plaintiff. It is unnecessary to recite all the alleged ensuing intricate financial dealings. In substance it is alleged that defendants then knew that Carlin and his several corporations were in serious financial trouble; that Carlin with the aid of defendants by the means of fictitious loans siphoned off large sums of money from plaintiff's treasury.

Subsequently, plaintiff and Carlin entered into an agreement by the provisions of which the claims of the former were settled. Defendants were not a party to this agreement and were not mentioned therein. The question here presented centers upon a certain release provision in this agreement. Plaintiff therein agreed " that it will not institute any suit   *   *   *   against any person whomsoever " with certain exceptions here immaterial. Special Term in substance held that there was no ambiguity to be found in this language and giving the release provision its full import it inured to the benefit of defendants.

We construe the third cause of action, as did Special Term, to allege a breach of an agreement by defendants to supervise the activities of Carlin with plaintiff and particularly in the light of the agreement of January 28, 1959.

We disagree, however, with the conclusion of Special Term that, as a matter of law, it may be decided that the release provision inured to the benefit of defendants. This presents a triable issue. *Lucio* v. *Curran* (2 N Y 2d 157) relied on by respondents is distinguishable. Therein plaintiff executed a general release to certain defendants in the instant action and subsequently brought another action against them and others. It was held that the second action was barred not only as to the defendants specifically released by the prior instrument but also the remaining defendants who were found to be joint tort-feasors.

The general rule here applicable has been stated as follows: " Although the effect of a general release, in the absence of fraud or mutual mistake, cannot be limited or curtailed (see *Lucio* v. *Curran,* 2 N Y 2d 157, 161; *Kirchner* v. *New Home Sewing Mach. Co.,* 135 N. Y. 182, 188), its meaning and coverage necessarily depend, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was actually given. Certainly, a release may not be read to cover matters which the parties did not desire or intend to dispose of." (*Cahill* v. *Regan,* 5 N Y 2d 292, 299.)

Upon the present record issues are presented as to the scope and meaning of the release that require a trial.

The order appealed from should be reversed and the motion denied.

BREITEL, J. (dissenting). The paragraph of the formal agreement to which plaintiff was a signatory and upon which depends the pivotal issue on this appeal reads as follows: " OXFORD agrees that it will not institute any suit, and as well WERBER and KLIMERMAN, in their capacity as stockholders of OXFORD, will not institute any suit, against any person whomsoever, except in connection with present or future suits to collect the collateral belonging to OXFORD, referred to above, or to proceed against INLAND CREDIT CORPORATION or THE FIRST NATIONAL CITY BANK in connection with the said ZAIFRED suit mentioned above in which OXFORD, WERBER and KLIMERMAN are parties defendant."

The paragraph was contained in an integrated agreement — the product of deliberate negotiation among parties represented by lawyers. It expresses a contemplated finality to the settlement in which substantial considerations moved from one party to the other. About this there is no serious dispute. Instead, it is assumed that this is a general release and that a general release somehow opens the door wide to parol evidence.

Whether the paragraph is considered a " release ", a " covenant not to sue ", or as falling in some other legal category, is not of particular significance. It is of some significance that it does not contain the formal stereotyped words of a general release. It is of the utmost significance that the language provides, without exception, that the negotiated settlement is to end all further claims and litigations which might arise from the Carlin-engineered transactions. That Carlin had an interest in purchasing such an engagement is readily evident. Any connected or derivative liabilities of others involved with him would create plausible, if doubtful, claims over against him.

At this point it would ordinarily suffice, therefore, that any causes of action plaintiff might have, within the purview of the Carlin transactions covered in the agreement, were discharged and released for purposes of summary judgment under rule 107 of the Rules of Civil Practice.

It is urged, however, that because the agreement partakes of the nature of a " release " it is subject to parol exploration whether the purported release covers the transactions or causes of action upon which plaintiff sues. Notably, the various rules, and even variant rules, applicable to general releases are largely associated with the common form of document, used for centuries, which is rarely an integrated agreement, and

which contains stereotyped language relating to every conceivable claim between the parties. *Lucio* v. *Curran* (2 N Y 2d 157) both in the majority and dissenting opinions discusses these rules completely. It is evident from a reading of the *Lucio* case that no one would dispute that the problem involved in a general release, as distinguished from a "restricted" release or a fully integrated agreement containing a particularized release or discharge, is simply to make sure that the generality of language has not mistakenly covered unintended consequences. Even then the *Lucio* case held the parties bound to the terms of a standard general release, because "[T]he terms contained therein were deliberately bargained for" and were not the result of "mere inadvertence, accident, mutual mistake or fraud" but "followed deliberate, prolonged negotiation between the parties" (p. 161). But a general release is not the fulcrum of the problem here.

The agreement in suit does not use a series of stereotyped phrases common in form releases or the general discharge language of a "general release". Instead it expressly covers only liabilities "against any person whomsoever" in connection with the matters covered in the settlement agreement and with respect to which Carlin personally received the equivalent of a general release under paragraph 13 of the agreement.* Consequently, the rules applicable to "general releases" are not decisive here (see Restatement, Contracts, § 403). Instead, there is involved the basic principle of the parol evidence rule because there is a contractual agreement, and not a "general release" or a mere receipt, to which different rules might apply.

Applying the parol evidence rule, in the absence of reformation of the agreement, plaintiff may not offer proof to vary or contradict its purport. Although defendants were not signatories to the agreement, plaintiff was; and defendants' rights or immunities are derivative, analogously, as those of donee

---

* Paragraph 13 reads as follows: "OXFORD and WERBER and KLIMERMAN, solely in their capacity as stockholders of OXFORD, and not otherwise, hereby release CARLIN and JOSEPH CARLIN from all obligations of any kind, except from those obligations incurred by the terms of this agreement, with the same force and effect as if this paragraph constituted and was in the form of a regular general release."

Equally interesting is the general release given by Carlin contained in paragraph 9, which reads as follows: "CARLIN personally hereby releases OXFORD and WERBER and KLIMERMAN, individually, and their wives, from any claim of any kind, nature or description whatsoever, as if this paragraph constituted and was in the form of a regular general release." The generality of the language is in significant contrast to the particularized language contained in the provision in suit, demonstrating, dramatically, the difference between a "general" and a "restricted" release.

beneficiaries (3 Corbin, Contracts, § 596; Richardson, Evidence [8th ed.], § 608; 9 Wigmore, Evidence [3d ed.], § 2446; Restatement, Contracts, §§ 133, 139; 10 N. Y. Jur., Contracts, § 241). Thus plaintiff may not show that the intention, let alone the subjective intention, or worst, the unilateral subjective intention, was other than as expressed in the agreement.

*Cahill* v. *Regan* (5 N Y 2d 292) does not suggest any contrary doctrine. Like the *Lucio* case, there was involved a general release. Judge FULD summarized the principles but went on to point out that the general release in that case did not cover matters which had not even arisen until after the release had been given and at a time when one of the parties was not aware of the facts upon which its subsequent claim would rest.

Even if one were allowed to pursue the matter further, plaintiff's affidavit fails to establish any evidentiary facts to justify exploration of the negotiations which preceded the execution of the agreement. Plaintiff's affidavit stresses that defendants were not present or represented in the negotiations; that neither they nor their obligations were mentioned. None of this is material (Restatement, Contracts, § 139; 10 N. Y. Jur., Contracts, § 241; *Kirchner* v. *New Home Sewing Mach. Co.*, 135 N. Y. 182, 187). Then, in conclusory form, plaintiff's affidavit stresses that the purpose of the clause was the protection solely of various members of Carlin's family and a number of brokerage concerns. None of this is material. But more important, none of it, with one exception,* is related to any conversations or dealings among the signatories to the agreement. It is merely the affiant's speculation or unilateral opinion as to the purpose of the agreement; the speculation is never related to the negotiations which brought the agreement into being. Consequently, even if the parol evidence rule could be by-passed, there is still no issue of fact raised as to the intention which gave birth to the language in the agreement.

Accordingly, I dissent and vote that the order and judgment be affirmed.

RABIN, EAGER and BASTOW, JJ., concur in *Per Curiam* opinion; BREITEL, J., dissents in opinion in which BOTEIN, P. J., concurs.

Order and judgment reversed upon the law, with costs to the appellant, and the motion to dismiss the complaint denied.

---

* One of the attorneys quotes a negotiator as having said, " After all Oxford has a good case against Landau "; and this is not elaborated or related any further.