Fuld, J.
In 1944 Anna Brener died, leaving a will bequeathing a portion of her estate to “ Max Katz,” a relative. The testatrix had two relatives by that name, one a resident of Toronto, Canada, and the other of New York City. Following the probate of the will, a hearing was conducted to determine the identity of the Max Katz intended as legatee; the Surrogate decided in favor of Katz of New York.
The will also provided for bequests to other relatives. They were last known to have lived in Europe and a question arose *426 as to whether they survived the testatrix and, dependent on that, whether the gifts lapsed. If the legacies did lapse, Mr. Katz of New York was the sole legatee and entitled to the entire estate, but if they did not, Max Katz of Toronto, as next of kin of one of the legatees, was entitled to receive a part of his bequest. Finding that there had been no lapse, the Surrogate decided that Mr. Katz of Toronto became entitled to receive a share of the estate. However, he had executed an assignment to his New York City cousin, reading as follows:
“ I, Max Katz [of Toronto] do hereby acknowledge receipt of the sum of Two Hundred ($200.00) Dollars from Max Katz [of New York City] and I further declare and in consideration of being paid said sum do hereby assign, transfer and set over to said Max Katz * * * all my right, title, and interest in and to any and all claims that I may have against the Estate of Anna Brener, deceased, or any proceeds that may enure to the benefit of said Estate.” (Emphasis supplied.)
To overcome the impact of this assignment, Mr. Katz of Canada contended that it was invalid on the ground that he had been deceived into executing the assignment by an attorney (Sidney S. Levine) who was also an executor of the estate. More specifically, he testified that he was told, and believed, that the “ piece of paper ” he signed was a receipt. He explained that he was unable to read English and that Mr. Levine stated that his cousin, Max Katz of New York, “got to give you [$200] for the expenses ” which he incurred in connection with the will and that he, Mr. Levine, required a receipt to show that payment had been made. He did not realize, Mr. Katz added, that he was “giving away any rights [he] had” in Anna Brener’s estate.
The Surrogate disbelieved this testimony of fraud and overreaching and held that the assignment was valid and that it effectively transferred all of his right and interest in the estate to Max Katz of New York. Upon appeal, the Appellate Division, two justices dissenting, modified the Surrogate Court’s decree, deciding—though the point was not made or argued — that Max Katz of Toronto had assigned the interest which he might have had as a named legatee under the will, and nothing more.
*427 We find no basis for such a determination. The assignment which was executed was broadly framed, without words of restriction or limitation, and there is nothing in the testimony of any witness to suggest that it was to be limited in any way. The language employed could not have been more explicit or unambiguous: the assignor assigned “ all [his] right, title and interest in and to any and all claims ’ ’ that he might have against the estate. This necessarily included any claim he might have had either as a named legatee or as a potential heir of deceased legatees.
Nor does the evidence upon the trial cast any doubt on the scope or content of the assignment. When it was executed, Max Katz of Toronto, knowing that the estate had not yet been settled and insisting that he was going to ‘ ‘ fight the will ’ ’, accepted $200. Manifestly, the payment was made and received to put an end to further disagreement and controversy and to satisfy any and all claims which the recipient might have against the estate. Since the issue concerning the identity of the named legatee had been conclusively adjudicated in favor of Katz of New York, it is obvious that he did not pay his cousin to procure an assignment of the latter’s nonexistent rights as named legatee. Unquestionably, as the assignee and the executor both emphatically testified, the $200 was paid only upon the understanding that it carried with it the assurance, expressed in the assignment, that Katz of Toronto was assigning whatever rights he might have and that he would make no further claim of any kind against the estate.
In point of fact, the Canadian Mr. Katz did not even attempt, in the hearing below, to limit the coverage of the assignment to his interest in the estate as a designated beneficiary. He simply testified that he had been deceived as to the nature of the document which he signed and, for that reason, urged that there was no valid assignment. Since there was ample proof to support the finding of both the Surrogate’s Court and the Appellate Division against him on this fact issue, there is no need, in determining the coverage of the assignment, to do more than examine the document and the testimony given by the assignee and the executor who dealt with the assignor and participated in its execution.
*428 In this view of the matter, it is beside the point that the parties did not expressly discuss the possibility that Max Katz of Toronto might be held entitled to the share of a predeceased legatee. An assignment such as the present—which in a very real sense resembles a general release — does not fail simply because its exact coverage cannot be determined with certainty as of the time of execution. It is enough that it was knowingly executed for the specific purpose of having Katz of Toronto assign “ all [his] right, title and interest in and to any and all claims ” which he might have against Mrs. Brener’s estate and of thereby barring him from asserting any future or further claim. (Cf. Kirchner v. New Home Sewing Mach. Co., 135 N. Y. 182, 188; Lucio v. Curran, 2 N Y 2d 157,161; Cahill v. Regan, 5 N Y 2d 292, 299.)
In sum, as Appellate Division Justice Valente wrote in the course of his dissenting opinion, ‘ ‘ Having finally disposed of any interest in the estate for an adequate consideration, appellant [Max Katz of Toronto] should not be permitted to reopen the transaction because subsequent events disclosed that he would have a claim as an heir for a deceased legatee.”
The order of the Appellate Division should be reversed and the resettled order of the Surrogate reinstated, with costs in this court and in the Appellate Division payable to appellant by Max Katz of Toronto.
Chief Judge Desmond and Judges Dye, Van Voorhis, Burke and Foster concur with Judge Fuld; Judge Froessel dissents and votes to affirm upon the majority opinion at the Appellate Division.
Order reversed, etc.